UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SANDUSKY,

    Plaintiff,                                 Civil Action No. 21-CV-11275

vs.                                          HON. BERNARD A. FRIEDMAN

LTD FINANCIAL SERVICES, LP,

    Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND DISMISSING
WITHOUT PREJUDICE PLAINTIFF'S REMAINING CLAIMS**

This matter is presently before the Court on defendant's motion for summary judgment. (ECF No. 29). Plaintiff has responded (ECF No. 36) and defendant has replied (ECF No. 39). Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing. For the following reasons, the Court shall grant the motion in part and dismiss plaintiff's remaining claims without prejudice.

**I.    Background**

This case relates to the alleged debt collection practices of defendant LTD Financial Services, LP ("LTD"). Plaintiff Michael Sandusky incurred credit-card-related debt to The Bank of Missouri in January 2019. (ECF No. 1, PageID.2, ¶ 7) (ECF No. 29-2, PageID.141-42). Plaintiff's debt allegedly totaled $513.57 and was never paid off. (ECF No. 1, PageID.5, ¶ 22) (ECF No. 29-2, PageID.143). The debt was subsequently "charged off and turned over to Defendant for collection purposes." (ECF No. 1, PageID.3, ¶ 8).

Plaintiff alleges that "on or around March 31, 2021, he received a letter from Defendant which contained credit card statements relating to the subject consumer debt. These

credit card statements indicated Plaintiff did not owe any money on the subject debt." (*Id.*, PageID.3, ¶¶ 9-10). However, shortly thereafter plaintiff allegedly started receiving collection calls to his cellular phone. (*Id.*, PageID.3, ¶ 11). Plaintiff asserts that he has received dozens of phone calls from defendant seeking collection, despite informing defendant's representatives about the March 31 letter and requesting that the calls cease. (*Id.*, PageID.4, ¶¶ 17, 19-21). Plaintiff adds that on one occasion, defendant "abruptly ended the call when Plaintiff began asking questions about the subject consumer debt." (*Id.*, PageID.4, ¶ 18). Plaintiff further alleges that "[o]n or around May 3, 2021, [he] received a collection letter from Defendant indicating that Plaintiff owes $513.57 on the subject debt." (*Id.*, PageID.5, ¶ 22). Plaintiff contends that he has been "unfairly and unnecessarily harassed" by defendant's debt collection practices. (*Id.*, PageID.5, ¶ 24).

The complaint includes various claims under the Fair Debt Collection Practices Act ("FDCPA") and the Michigan Occupational Code ("MOC"). However, as explained in plaintiff's brief in response to the instant motion and in defendant's reply, only a subset of the claims remain. Plaintiff indicates that the only claims he intends to pursue are those "pursuant to 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f, and MOC claims pursuant to M.C.L. § 339.915(f)(ii), stemming from Defendant's utilization of deceptive and misleading representations in the collection correspondences sent to Plaintiff." (ECF No. 36, PageID.334).[1] The Court shall grant summary

---

[1] In his response brief, plaintiff states that he "abandons his claims asserted under the [FDCPA] and [MOC] to the extent such claims involve Defendant's alleged conduct in placing phone calls to Plaintiff's cellular phone after he requested such calls cease or otherwise informed Defendant he did not believe he owed the subject debt." (ECF No. 36, PageID.334). As defendant notes in its reply brief, plaintiff has also failed to defend his claims under 15 U.S.C. § 1692(d), relating to the alleged "hang-up" call, and MICH. COMP. LAWS § 339.915(q), which alleges failure to implement a procedure designed to prevent violations of the MOC. (ECF No. 39, PageID.435).

judgment on all claims that are no longer in dispute (i.e., those arising from the alleged cease request and hang up call, as well as defendant's alleged failure to implement a procedure designed to prevent violations of the MOC ) and shall only address the remaining claims.

As relevant to those claims, plaintiff contends that the March 31 letter "clearly indicates that Plaintiff does not owe any money," while the May 3 letter "states that Plaintiff owes $513.57." (ECF No. 1, PageID.8, ¶ 38). Plaintiff argues that it was "misleading," "unfair[,] and unconscionable for Defendant to provide [him] with conflicting information about the subject consumer debt." (*Id*., PageID.7, 9, 11, ¶¶ 35, 41, 49). He seeks injunctive and declaratory relief, compensatory damages, statutory damages, costs, and attorney fees. (ECF No. 1, PageID.13).

## II.  Motion for Summary Judgment

In the instant motion, defendant argues that neither the law nor the facts support plaintiff's claims. Defendant asserts that the March 31, 2021, letter was sent in response to an inquiry from plaintiff regarding his debt. (ECF No. 29, PageID.110). The letter included a "copy of the charge-off statement," which listed the original creditor as "The Bank of Missouri/Total Visa" and the current creditor as "LTD Acquisitions, LLC." (*Id*., PageID.111); (ECF No. 29-6, PageID.300). It also stated that "on March 31, 2020, the balance of $513.57 was 'CHARGE[D] OFF' resulting in a balance due of '$0.00.'" (ECF No. 29, PageID.111) (citing ECF No. 29-4, PageID.251-53; ECF No. 29-6, PageID.303-04). Defendant contends that plaintiff failed to read the entire charge-off statement, did not know what "charge-off" meant, and "did not bother to Google the term or look it up in a dictionary." (ECF No. 29, PageID.111).

Defendant states that, despite various attempts to communicate with plaintiff, it was not until the filing of this lawsuit that defendant "came to understand that in misconstruing the

3

meaning and effect of the charge-off entries reflected in the charge-off statement, Sandusky presumably came to erroneously believe that the balance was not owed." (*Id*., PageID.112). However, defendant argues, had plaintiff looked up the term "charge-off" he would have learned that it simply means that the debt is treated as "bad" because "payment is unlikely." (*Id*., PageID.116-17). "[C]harging off an account does not equate to debt forgiveness." (*Id*., PageID.117) (citation omitted). Defendant further contends that because the March 31 charge-off statement "did not release or forgive the debt," the information contained in the May 3, 2021, letter regarding the $513.57 balance did not "misrepresent[] the character, amount or legal status of the debt and/or the rights of the creditor," nor did it constitute "misleading, deceptive, unfair or unconscionable means to collect." (*Id*., PageID.120).

At most, defendant argues, "Sandusky's allegations suggest a misunderstanding of the charge-off statement sent to him," which is "insufficient to establish a violation" of the relevant statutes. (*Id*.). First, defendant contends, the March 31 letter containing the charge-off statement "was neither a collection attempt nor sent in connection with the collection of a debt." (*Id*.) (quotation marks omitted). Rather, it was "merely sent to fulfill Sandusky's request that he be mailed something on the debt." (*Id*., PageID.121). Second, defendant asserts that "even under the least sophisticated consumer standard, Sandusky's interpretation of the March 31, 2021 correspondence" – that "his creditor altruistically forgave his debt" – is "bizarre," "nonsensical," and "unworthy of countenance." (*Id*., PageID.121-23). Finally, defendant contends that because plaintiff did not suffer any injury as a result of defendant's alleged actions, his claims are not

cognizable under the MOC and he lacks standing under federal law. (*Id.*, PageID.114, 126-30).[2]

In response, plaintiff asserts that

> Defendant's Motion is largely premised on its misapplication of the least sophisticated consumer standard to the instant matter. Defendant believes that the least sophisticated consumer, after being provided documentation showing that the balance of the debt was $0.00 and that no payments were due on the subject debt, would nevertheless understand that a balance was still owed because, on the third page of that same statement, there are vague references to certain amounts "CHARGE[d]-OFF."

(ECF No. 36, PageID.336).

Plaintiff further contends that the charge-off statement was not sent in response to his own inquiry, but was rather a "validation letter" sent in connection with a March 1, 2021, collection call initiated by defendant. (*Id.*, PageID.338) (citing ECF No. 29-4, PageID.241-44).

---

[2] In the instant motion, defendant also raises the bona fide error defense. The Sixth Circuit has explained:

> To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error.

*Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 614 (6th Cir. 2009). Although defendant outlines various arguments in relation to plaintiff's now abandoned claims, it does not apply the bona fide error defense – in particular, prong three – to plaintiff's remaining claim regarding the inconsistent information presented in the March 31 and May 3 communications. (ECF No. 29, PageID.125) (stating that defendant has "put procedures in place to prevent hang-ups and continuing calls after a cease request" and that defendant's "practice of initially relying on creditor clients to place valid and accurate accounts with [it] is permissible so long as it has no reason to suspect the information is erroneous"). Plaintiff's remaining claims essentially rest on the argument that the charge-off statement misrepresented the debt owed as "$0.00." In arguing the bona fide error defense, defendant does not address the potentially confusing nature of this document – or any relevant preventative procedures – but rather reiterates that "a charge-off does not legally release a debt." (*Id.*, PageID.124). Therefore, defendant has failed to show that it is entitled to summary judgment on the basis of this defense.

Plaintiff further argues that the charge-off statement misleadingly listed plaintiff's "New Balance," "Monthly Payment," "Amount Past Due," "Amount Over Credit Limit," and "Total Minimum Payment Due" as "$0.00." (*Id.*, PageID.339). Plaintiff therefore "believed there was no remaining balance owed on the subject debt." (*Id.*, PageID.340). Plaintiff adds that "there was no indication on the first page of [the charge-off] statement that the balance of the debt was $0.00 because of the debt being charged-off" or that the consumer should "go to the third page of the statement for further information," nor did the statement "tie the referenced charge offs on the third page to . . . the balance on the first page." (*Id.*, PageID.346, 349). Plaintiff asserts that but for defendant's March 31 validation letter, he would have paid the subject debt in full and that "this reliance was detrimental to [his] financial interests" – an "intangible, but nevertheless concrete, injury." (*Id.*, PageID.349, 357).

In its reply brief, defendant contends that plaintiff has inappropriately raised new claims and damages theories in his response to the instant motion. (ECF No. 39, PageID.436, 438). Defendant first argues that plaintiff's complaint takes issue with the May 3 letter whereas plaintiff's response brief takes issue with the March 31 letter. (*Id.*, PageID.436-37). Second, defendant contends that plaintiff's detrimental-reliance-based damages theory "does not appear anywhere in his Complaint, . . . and the sole support for the new injury is a vague assertion in his deposition that 'owing something hurts you no matter what.'" (*Id.*, PageID.438) (quoting ECF No. 36-3, PageID.400). Defendant contends that "plaintiffs cannot raise new theories in opposition to summary judgment," a principle that "equally applies to standing allegations" as it does to new claims. (*Id.*, PageID.436, 438).

### III. Legal Standards and Analysis

> In deciding a motion for summary judgment, the Court
>
> must view the evidence in the light most favorable to the party opposing the motion for summary judgment. *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020). "This includes drawing 'all justifiable inferences' in the nonmoving party's favor." *George*, 966 F.3d at 458 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Jackson-VHS*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505).

*Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021).

Prior to discussing the merits of plaintiff's claims under the FDCPA and MOC, the Court shall address defendant's arguments regarding the alleged damages (or lack thereof), as well as plaintiff's new damages theory raised in response to the instant motion.

Both plaintiff's state and federal claims require that he suffered an injury as a result of the statutory violations. First, the MOC states that "[a] person who suffers injury, loss, or damage, or from whom money was collected by the use of a method, act, or practice in violation of this article or rules promulgated under this article, may bring an action for damages or other equitable relief." MICH. COMP. LAWS § 339.916(1).

Second, "Article III of the Constitution limits the jurisdiction of federal[] courts to hear only actual cases and controversies. U.S. Const. art. 3, § 2. The doctrine of standing aids us in defining these limits. The plaintiff bears the burden of establishing standing." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). If a plaintiff fails to establish standing, the Court lacks subject matter jurisdiction. *See id*. ("Whether a party has standing is an issue of the court's subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). As relevant here, one of the three

elements that comprise constitutional standing is that the plaintiff "must have . . . suffered an injury in fact." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotation marks omitted). "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* at 340. "'Concrete' is not, however, necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* Further, "Article III standing requires a concrete injury even in the context of a statutory violation. . . . [A plaintiff] cannot allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 341. "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." *Id.*

> In the FDCPA context, the Sixth Circuit has explained that
> 
> [a plaintiff] does not automatically have standing simply because Congress authorizes a plaintiff to sue a debt collector for failing to comply with the FDCPA. . . . [The plaintiff] must show either that the procedural harm itself is a concrete injury of the sort traditionally recognized or that the procedural violations caused an independent concrete injury.

*Ward v. Nat'l Patient Acct. Servs Sols., Inc.*, 9 F.4th 357, 361 (6th Cir. 2021). "[C]onfusion alone is not a concrete injury for Article III purposes." *Id.* at 363. However, confusion that translates into detrimental action or inaction may suffice to establish Article III standing. As another judge in this district has explained:

> There is a readily apparent real risk of harm in such a situation that a debtor presented with such deceptive communications, deprived of an accurate understanding of his situation by the defendant['s] misinformation, could make decisions detrimental to his personal financial position or legal rights that he otherwise would [not] make,

8

> if he were fully and accurately informed. An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.

*Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. 2017) (internal quotation marks and citation omitted).

Here, plaintiff's complaint enumerates the damages as including but not limited to:

> invasion of privacy, aggravation that accompanies excessive collection telephone calls, emotional distress, increased risk of personal injury resulting from the distraction caused by the never-ending calls, increased usage of his telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on his cellular phone, diminished space for data storage on his cellular phone, emotional pain and suffering and distress stemming from dealing with Defendant's misleading and deceptive behavior.

(ECF No. 1, PageID.5, ¶ 25). The complaint makes no mention of detrimental reliance or any resulting financial harm related to plaintiff's credit score or otherwise. Most of the damages that are included in the complaint pertain to the now abandoned claims arising from the alleged cease request and hang up call, as well as defendant's alleged failure to implement a procedure designed to prevent violations of the MOC. Moreover, in his response to the instant motion, plaintiff has failed to raise any of the damages theories included in the complaint. Rather, he relies entirely on the new theory of detrimental reliance.

Under Fed. R. Civ. P. 8(a)(2), a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The Supreme Court has further explained:

> Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the

> plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted).

In his response brief, plaintiff provides no affidavit, evidence, or specific facts in support of his new theory of damages. He merely states that, but for his reliance on defendant's March 31 letter, he "would have paid the debt and improved his financial position." (ECF No. 36, PageID.357). The only evidence that either party references in relation to this damages theory is a statement made during plaintiff's deposition. When asked if the March 31 letter influenced his "decision on whether or not to pay [the subject] debt," plaintiff responded:

> Yes. Oh, absolutely. . . . I mean that plain and simple. . . . If it would have stated that I owed $513 instead of saying I owed zero, there would have been payment plans or I would have just paid it all up front just to get it done and over with and out of the way. Because I mean I [have] never really been on that level, but I do know that owing something hurts you no matter what.

(ECF No. 36-3, PageID.400). This statement lacks specific facts regarding any harm that plaintiff suffered in reliance on defendant's communications.

Further, "[t]he bar against asserting new theories at the summary-judgment-response stage is well established." *Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 667 (6th Cir. 2012). "[A]llowing a plaintiff to raise new theories in response to a motion for

10

summary judgment would den[y] a defendant sufficient notice of what claims to investigate. Moreover, by the summary judgment stage, plaintiff has conducted discovery and has had the opportunity to amend the complaint and raise additional theories." *Rafferty v. Trumbull Cnty., Ohio*, 758 F. App'x 425, 429 (6th Cir. 2018). Plaintiff has provided no explanation for his failure to include the detrimental reliance damages theory in the complaint, nor any explanation for his failure to timely move for leave to amend. The prejudice that defendant has suffered due to plaintiff's belatedly asserted damages theory is clear. Defendant's motion for summary judgment carefully addresses the damages actually alleged in plaintiff's complaint and makes no mention of detrimental reliance-related financial harm because it "had no notice that it would have to defend against such allegations" and "no opportunity to collect evidence in its defense against such claims during the discovery." *Desparois*, 455 F. App'x at 667.

Even if the new damages theory had been included in plaintiff's complaint, his remaining claims would still fail for want of damages. As discussed above, plaintiff has not presented any record evidence to support his detrimental reliance theory – no valuation, no description, hardly even a reference. There is simply insufficient evidence for a reasonable jury to either assess injury or to quantify damages. The Court therefore concludes that plaintiff "has failed to show more than a bare procedural violation of the FDCPA [and MOC], he does not have standing to bring his claims, and [this court] lack[s] subject-matter jurisdiction to address them." *Ward*, 9 F.4th at 363. Plaintiff's remaining claims shall therefore be dismissed without prejudice, as "a federal court lacking subject-matter jurisdiction is powerless to render a judgment on the merits." *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018). Accordingly,

IT IS ORDERED that defendant's motion is granted as to plaintiff's claims under 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692(d), 1692(d)(5), 1692e, 1692e(10), 1692f and MICH. COMP. LAWS §§ 339.915(f)(ii), 339.915(n), and 339.915(q), arising from the alleged cease request and hang up call, as well as defendant's alleged failure to implement a procedure designed to prevent violations of the MOC. Plaintiff has voluntarily abandoned those claims.

IT IS FURTHER ORDERED that plaintiff's claims under 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), and 1692f, and MICH. COMP. LAWS § 339.915(f)(ii), stemming from defendant's alleged utilization of deceptive and misleading representations in collection correspondences, are dismissed without prejudice for lack of subject matter jurisdiction.

s/Bernard A. Friedman
Hon. Bernard A. Friedman
Senior United States District Judge

Dated: September 15, 2022
Detroit, Michigan